IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:15CR44 (LMB) |
| | ) | |
| v. | ) | The Hon. Leonie M. Brinkema |
| | ) | |
| AMAR ENDRIS | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America files this position paper with respect to the Defendant Amar Endris. After a two-day jury trial, the Defendant was found guilty of possessing a firearm with an obliterated serial number, in violation of Title 18, United States Code, Sections 922(k) and 924(a)(1)(B). For the below-mentioned reasons, the United States respectfully asks that this Court impose a sentence within the properly calculated Sentencing Guidelines range of 27-33 months, followed by a period of supervised release.

## BACKGROUND

The facts of this case are well known to the Court and are aptly summarized in the Presentence Report ("PSR"). There a few brief points that the Government would highlight.

Over an extended period of time, the Defendant repeatedly and insistently expressed a desire to obtain an illegal firearm. This desire was more than a passing interest for the Defendant. As early as July 11, 2014, the Defendant went to the so-called Chinese guy's store to purchase a firearm with "no strings attached" and he expressly avoided purchasing other weapons because "you have to do paperwork for the other sh*t." On August 5, 2014, the Defendant described to the Confidential Human Source ("CHS") how he had discussed purchasing a "dirty gun" from a

1

"Spanish dude" whose "people are like the cartel . . . ." Then again on August 19, 2014, the Defendant explained how he was going to use a handgun, which he referred to as a "strap," to commit an armed robbery.

> Alright . . . I'm a, I'm a, the first time, the first time . . . [Inaudible] . . . I'm gonna, I'm gonna buy khat from him at 3 times, 3 times. I'm gonna buy that from him like 3 times and then like um for the like for the 4th time I'm gonna be like, I need . . . I need, like maybe 10 . . . . I need a, nah, . . . I'm not even gonna say that. I'm gonna say I need some. I'm gonna go to his crib. . . [Inaudible] . . I'm gonna go inside. As soon as we, soon as we go inside, go inside, I'm gonna pull a strap out on him and say like give, give me everything. Go, go, go lead me to the safe . . . .

This conversation exposes the Defendant's plot to use a handgun to commit an armed robbery and explains, in part, why the Defendant wanted an untraceable handgun. A week after this conversation, on August 26, 2014, the Defendant concocted a plan to buy a handgun from a straw purchaser explaining, "I want to find someone that's 21 that I trust and sh*t that's cool and I wanna give them the money and I wanna go to the store with them and I want them to buy it." Then following these conversations, in September 2014, the Defendant acting independently of the CHS, attempted to purchase a gun off the streets from an associate of his friend Polo. He was unsuccessful and was robbed. All of these actions, which the jury apparently credited in rejecting the Defendant's entrapment defense, show a long-standing desire to obtain an illegal weapon.

Further, it was only after the Defendant said repeatedly that he wanted an illegal handgun that he was offered one by the CHS. Notably, on October 1, 2014, when the CHS described the gun for sale, he made it clear that it had an obliterated serial number and was illegal, "[h]e wants you to know, the gun is um, it doesn't have the serial number on it, it's been scratched off so that's why he's trying to get rid of it 'cause it's like, uh, you aint supposed to have it, it's illegal." The Defendant responded, "don't, don't tell me on the phone, we'll talk about it when, we'll talk

12913243.1

about it." Never does he say that he is not interested in this gun because he wants a gun that is legal. Instead, after a two month cooling-off period, the Defendant contacted the CHS and inquired about the gun, and the Defendant then came up with the $300 in cash to purchase the gun on December 17, 2014. As this timeline reveals, the Defendant acted methodically and purposefully over several months to obtain an untraceable weapon.

Finally, as is discussed in greater detail in the presentence report, the Defendant has an extensive history of substance abuse. The Defendant was arrested for possession of marijuana when he was sixteen, PSR at ¶ 32, and he admitted to regularly using marijuana since the age of fourteen. PSR at ¶ 49, 54. The Defendant's father testified at trial that his son was admitted previously to a substance abuse treatment program. The CHS testified that he smoked marijuana with the Defendant on two occasions, and there is other evidence that the CHS bought drugs from the Defendant. The Defendant admitted that he used marijuana the day he bought the pistol with the obliterated serial number. PSR ¶ 54. Finally, the Defendant tested positive for marijuana on February 9, 2015, while on pretrial supervision. PSR at ¶ 55.[1] The Defendant's longstanding drug use is a factor relevant to sentencing.

## **STATUTORY RANGE AND GUIDELINES RANGE**

1.  *Statutory Range*

Under 18 U.S.C. §§ 922(k) and 924(a)(1)(B), the maximum penalty for the Defendant's offense is five years imprisonment, a $250,000 fine, a $100 special assessment, and three years of supervised release. 18 U.S.C. § 924(a)(B); 18 U.S.C. § 3571; 18 U.S.C. § 3583; 18 U.S.C.

---

[1] After the Defendant's arrest on December 17, 2014, he was ordered detained, in large part, because of threatening statements he made towards the guards in the Alexandria Jail. He was not released until February 3, 2015. Therefore, the Defendant's positive drug test on February 9, 2015 possibly reflected the fact that he had, by his own admission, smoked marijuana on the day of the gun deal.

12913243.1

§ 3559.

## 2. *The Properly Calculated Base Offense Level Is Fourteen*

The Government agrees with the PSR that the base offense level for a violation of Section 922(k) is fourteen per U.S.S.G. § 2K2.1(a)(6)(A). The defense, as best as the Government understands, has suggested that the proper offense level is twelve per U.S.S.G. § 2K2.1(a)(7) because the Defendant was not actually charged and convicted as a "prohibited person" under 18 U.S.C. §§ 922(g) or 922(n). The defense appears to read a conviction under either of these sections as a prerequisite to a 2K2.1(a)(6)(A) enhancement. (The presumptive basis for this claim is the fact that the commentary to section 2K2.1 of the sentencing guidelines defines "prohibited person" to mean "any person *described* in 18 U.S.C. § 922 (g) or § 922 (n)." U.S.S.G. § 2K2.1 cmt. n. 3 (emphasis added)). Thus, the defense's argument boils down to the claim that because the Defendant was convicted of possession of a prohibited firearm—that is a weapon with an obliterated serial number under 18 U.S.C. § 922(k) and 924(a)(1)(B)—that he cannot be considered a "prohibited person" with respect to a sentence enhancement under U.S.S.G. § 2K2.1(a)(6). This argument is not supported by the guidelines' language, the guidelines' commentary, or the case law. Accordingly, the Government agrees with the PSR's determination that the proper base offense level is 14.

Focusing first on the guidelines themselves, in relevant part, section 2K2.1(a)(6) indicates that "if the defendant (A) was a prohibited person at the time the defendant committed the instant offense," the proper base offense level is 14. U.S.S.G. § 2K2.1(a)(6). The term "prohibited person" defines the category of individuals to whom the § 2K2.1(a)(6) enhancement applies. Note the guideline does not expressly require a predicate *conviction* in order to be a "prohibited

12913243.1

person." It easily could have. After all, two other predicates for application of the same section 2K2.1(a)(6) enhancement are "if the defendant . . . (B) is *convicted* under 18 U.S.C. § 922(d); or (C) is *convicted* under 18 U.S.C. §922(a)(6) . . . ." U.S.S.G. § 2K2.1(a)(6) (emphasis added). If the drafters had intended to require convictions under 18 U.S.C. §§ 922(g) or 922(n) as the defense suggests, they could have paralleled the language in section 6 subparts B and C. The fact that they did not do so indicates that "prohibited person" is not limited merely to persons convicted of §§ 922(g) or 922(n) offenses.

This reading that "prohibited person" does not require a conviction is supported by the guidelines' commentary. There, as previously indicated, "prohibited person" is defined to mean "any person *described* in 18 U.S.C. § 922 (g) or § 922 (n)." U.S.S.G. § 2K2.1 cmt. n. 3 (emphasis added). The use of the term "described," rather than "convicted of," strongly suggests that in order for the enhancement to apply, one need not be convicted of either § 922 (g) or § 922 (n), but rather that one must have engaged in the conduct described in those sections, in this case, that the Defendant was "an unlawful user of or addicted to any controlled substance" in the language of § 922 (g)(3). *Stinson v. United States*, 508 U.S. 36, 38 (1993) (indicating that Guidelines' commentary that interprets or explains particular guidelines is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with or is a plainly erroneous reading of, that guideline). This interpretation is consistent with the underlying purpose of sentence enhancements which "do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." *United States v. Watts*, 519 U.S. 148, 154 (1997).

12913243.1

Additionally, the Government's reading of "prohibited person" is consistent with case law. At least three courts have applied the § 2K2.1(a)(6) enhancement to violations of the same statute of conviction at issue in this case, 18 U.S.C. § 922(k). *See United States v. McCowan*, 469 F.3d 386 (5th Cir. 20006) (affirming application of a § 2K2.1(a)(6) enhancement where the defendant was convicted of possession of a firearm with an obliterated serial number and where the defendant admitted to recreational use of marijuana and tested positive for marijuana after being arrested); *United States v. Snipe*, 515 F.3d 947 (9th Cir. 2008) (similar); *United States v. Edmonds*, 348 F.3d 950 (11th Cir. 2003) (affirming application of enhancement where the defendant admitted to a history of drug use, had marijuana in his hand and cigar paper in his lap when he was arrested, and tested positive for marijuana use while he was on bond). Moreover, numerous courts have applied the § 2K2.1(a)(6) enhancement, or other similar enhancements against "prohibited persons," where the underlying conviction was for a statute other than §§ 922(g) and 922(n). *See, e.g.*, *United States v. Bennett*, 329 F.3d 769 (10th Cir. 2003) (applying the § 2K2.1(a)(4)(B) enhancement after finding the defendant was a "prohibited person" based on his regular use of marijuana and amphetamines where the underlying offense of conviction was for possession of a silencer); *United States v. Huntington*, 221 F.3d 1345, *1 (8th Cir. 2000) (applying the § 2K2.1(a)(4)(B) enhancement after determining that the defendant was a "prohibited person" because of his use of marijuana and where the defendant pled guilty to possessing a machine gun). Taken together, these two facts—that the § 2K2.1(a)(6) enhancement has been applied to cases with similar charges combined with the fact that other courts have not limited application of § 2K2.1(a) enhancements to only cases involving convictions under 18 U.S.C. § 922 (g) or § 922 (n)—both indicate that the defense's restrictive interpretation of

6

§ 2K2.1(a)(6) is simply wrong. The proper interpretation based on the guidelines' language, commentary, and case law is that one can be considered a "prohibited person" if they engaged in conduct described in 18 U.S.C. § 922 (g) or § 922 (n). There is no question that the Defendant qualifies under this standard.

A prohibited person is "any person described in 18 U.S.C. § 922(g) or § 922(n)," U.S.S.G. § 2K2.1 cmt. n. 3, and includes any person "who is an unlawful user of or addicted to any controlled substance," 18 U.S.C. § 922(g)(3). To successfully request an enhancement under this provision, "the government must prove . . . that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *United States v. Purdy*, 264 F.3d 809, 813 (9th Cir. 2001); *see also United States v. Edmonds*, 348 F.3d 950, 953 (11th Cir. 2003) ("To support an offense enhancement under § 2K2.1(a)(6), the government does not have to prove the defendant was under the influence of a controlled substance at the time of his arrest. Instead, the government must show the defendant was an 'unlawful user' of a controlled substance during the same time period as the firearm possession.").

There are multiple sources of evidence that the Defendant was an "unlawful user" of drugs. The evidence includes the CHS's testimony that he smoked marijuana with the Defendant on two occasions and that he bought drugs from the Defendant, and the Defendant's father's testimony at trial that his son was admitted previously to a substance abuse treatment program. Furthermore, the Defendant has a long, documented history of substance abuse. PSR at ¶ 49, Alina Assessment Rep. at 3. The Defendant was arrested for possession of marijuana when he was sixteen, PSR at ¶ 32, and he admitted to regularly using marijuana since the age of fourteen.

7

PSR at ¶ 49, 54. During one brief period when he was working at a Pizza Boli's in the fall of 2013, the Defendant was fired for showing up at work high on drugs. PSR at ¶ 68.[2] Additionally, the Defendant tested positive for marijuana on February 9, 2015, following his release on pretrial supervision in the instant offense. PSR at ¶ 55. Finally, the Defendant admitted to the probation officer that he used marijuana on December 17, 2014—the very day he bought the pistol with the obliterated serial number. PSR at ¶ 54. Taken in its entirety, this evidence is more than sufficient to establish by a preponderance of the evidence that the Defendant was an "unlawful user" of controlled substances. *See, e.g.*, *United States v. McCowan*, 469 F.3d 386 (5th Cir. 2006); *United States v. Nevarez*, 251 F.3d 28, 30 (2d Cir. 2001) (finding that a defendant qualified for an increased penalty where the defendant was a repeated user of drugs); *United States v. Jarman,* 144 F.3d 912, 913 (6th Cir. 1998) (holding that defendant was a "prohibited person" because he "admitted to a presentence investigator at an interview that he used marijuana, cocaine, and methamphetamine from 1987 to 1992") (internal quotations omitted). Because the Defendant was an unlawful user of a controlled substance as described in 18 U.S.C. § 922(g)(3), fourteen is the proper base-offense level pursuant to § 2K2.1(a)(6).

3. ***Sentencing Guidelines Range***

For the reasons set forth above, the properly calculated base offense level is fourteen. The Defendant also receives a four-point enhancement because the firearm had an obliterated serial number per §2K2.1(b)(4)(B). This yields a total offense level of 18, and because the Defendant is in Criminal History Category I, the guideline range is 27-33 months in prison.

---

[2] The owner of the Pizza Boli's also reported that after being fired, the Defendant called the manager and threatened him, saying something to the effect that he would slit his neck. Given the charge of the conviction in this case, and the Defendant's varying reasons for wanting an untraceable weapon, this type of comment is obviously troubling.

The United States believes that this guideline range sufficiently accounts for the Defendant's personal circumstances and the factors of this case, such that a departure or variance is not warranted. The United States Probation Office agrees. PSR ¶ 73.

## ANALYSIS

Section 3553 enumerates a number of factors that a court is to consider when making a sentencing determination, including the following: the nature and circumstances of the offense and the history and characteristics of the Defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to serve as an adequate deterrent; the kinds of sentences available; the guideline range; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553 (2012). Applying these factors, the United States believes that a sentence within the properly calculated guidelines range of 27-33 months would be sufficient, but not greater than necessary, to punish the Defendant.

Focusing first on the nature and circumstances of the offense and the history and characteristics of the Defendant, the evidence presented at trial showed an individual who purposefully and methodically sought to purchase a weapon that could not be traced by the government. The Defendant sought out people connected with the underworld to purchase a "dirty" weapon, he sought out shops that sold weapons without paperwork, and he actively discussed employing a straw purchaser. On at least one occasion, the Defendant explained that he wanted an untraceable weapon to commit illegal acts.

The Government acknowledges that the Defendant is a young man and that he experienced difficulty at school. At trial, defense counsel characterized the Defendant as immature. Even taking this as true, youth and immaturity cannot and do not explain away the

9

Defendant's consistent efforts to engage in conduct that he knew to be wrong and illegal, whether it be the sale of drugs, the use of drugs, or his active efforts over a lengthy period of time to purchase an untraceable firearm. These were choices that the Defendant made and they have broader societal implications. There is a serious cost to society when criminals use guns with obliterated serial numbers. This is undoubtedly why Congress criminalized this conduct. Only by being able to trace firearms, especially handguns, can law enforcement attempt to rein in criminals who would use those firearms in crimes, without fear that the guns could be traced back to them. The prevalence with which these types of weapons are used in crimes was best expressed by the Defendant when he asked the F.B.I. UC if the firearm had any "bodies on it." The Defendant was fully aware that a handgun with an obliterated serial number was likely to have a criminal past, but he remained eager to purchase such a weapon.

Finally, the Government believes that there is a need to deter the Defendant and promote respect for the law, as well as to provide a just punishment. Despite having a supportive family, the Defendant has traveled down the wrong path. Prior attempts at drug rehabilitation have been unsuccessful. He has not maintained stable employment and was recently fired after his conviction because of "inappropriate contact" with customers. PSR at ¶ 64. The Defendant's use and sale of narcotics also reveal a general disrespect for the law. These actions, when viewed in their entirety and in light of the Defendant's repeated attempts to purchase an untraceable firearm, suggest that there is a legitimate need for deterrence and punishment. The United States believes that a term of incarceration within the guidelines range would serve this purpose.

10

## <u>CONCLUSION</u>

Therefore, for the above-stated reasons, the United States respectfully requests a within guidelines sentence to be followed by a term of supervised release.

Respectfully submitted,

Dana J. Boente
United States Attorney


_____/s/_____
John T. Gibbs
Special Assistant United States Attorney (LT)
Attorney for United States
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3775
Fax: 703-299-3982
Email Address: john.gibbs2@usdoj.gov

Jack A. Morgan
Special Assistant United States Attorney
Attorney for United States
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 202-353-7580
Fax: 703-299-3982
Email Address: jack.a.morgan@tax.usdoj.gov

12913243.1

<u>Certificate of Service</u>

I hereby certify that on July 17, 2015, I electronically filed this document with the Clerk

of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the

following:

Kevin Brehm
Assistant Federal Public Defender
Attorney for Amar Endris
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

Nick Xenakis
Assistant Federal Public Defender
Attorney for Amar Endris
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

12913243.1