1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | . | Criminal No. 1:15cr44 |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | April 17, 2015 |
| AMAR ENDRIS, | . | 11:00 a.m. |
| | . | |
| Defendant. | . | |
| | . | |

. . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:            JOHN T. GIBBS, SAUSA
                               JACK MORGAN, SAUSA
                               United States Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, VA 22314


FOR THE DEFENDANT:             KEVIN R. BREHM
                               NICHOLAS J. XENAKIS
                               Assistant Federal Public
                               Defenders
                               Office of the Federal Public
                               Defender
                               1650 King Street, Suite 500
                               Alexandria, VA 22314


OFFICIAL COURT REPORTER:       ANNELIESE J. THOMSON, RDR, CRR
                               U.S. District Court, Fifth Floor
                               401 Courthouse Square
                               Alexandria, VA 22314
                               (703)299-8595


(Pages 1 - 11)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1                      P R O C E E D I N G S
 2              THE CLERK:  Criminal Case 15-44, United States of
 3   America v. Amar Endris.  Would counsel please note their
 4   appearances for the record.
 5                        (Defendant present.)
 6              MR. GIBBS:  Good morning, Your Honor.  John Gibbs and
 7   Jack Morgan on behalf of the United States.
 8              THE COURT:  Good morning.
 9              MR. XENAKIS:  Good morning, Your Honor.  Nicholas
10   Xenakis and Kevin Brehm on behalf of Mr. Endris.
11              THE COURT:  All right.  Now, the reason we had this
12   hearing today on such short notice is because I do not intend
13   to take up the jury's time unnecessarily.  This trial starts on
14   Monday.
15              A motion in limine was filed by the defense.
16   Apparently, it looks as though the defense didn't get all this
17   information until this week, and so I think this motion
18   probably could not have been filed any sooner, but the
19   government did get a chance to respond, and the Court has
20   looked at the response and has considered it carefully.
21              Who's going to be the lead counsel during the trial,
22   Mr. Brehm or Mr. Xenakis?
23              MR. XENAKIS:  Mr. Brehm will be lead counsel.
24              THE COURT:  All right.  Then who's going to -- who's
25   arguing this motion today?
```

1          MR. XENAKIS:  I will be arguing the motion.

2          THE COURT:  Well, what I want to know is are you

3   raising an entrapment defense?

4          MR. XENAKIS:  Your Honor, at the moment, we are

5   intending to raise an entrapment defense.

6          THE COURT:  Then I think that clearly makes this

7   evidence necessary.  The government will have to be, will have

8   to be able to show that the defendant was not entrapped, that

9   is, that he had a predisposition to obtain an unlawful weapon,

10  and these three transcripts that are at issue in your motion in

11  limine are certainly relevant to that issue.

12         MR. XENAKIS:  Your Honor, would the Court be willing

13  to consider -- at the moment, we have the intention of waiting

14  until the door is opened.  I believe that there will be

15  discussions involving the confidential informant and

16  Mr. Endris, the recorded conversations and, I believe, Facebook

17  messages and of the like.  I believe that there is a potential

18  that if those conversations do not move into his

19  predisposition, that an entrapment defense would ultimately not

20  be raised.

21         Would the Court be willing to wait until Mr. Endris's

22  attitude towards obtaining a firearm or previous conversations

23  with the confidential informant about obtaining a firearm are

24  entered into evidence and are, and are contested?  Would the

25  Court be willing to wait until that moment to introduce these

4

1   three separate conversations, which we would offer are more
2   tangential, and, in fact, as the Court would note, none of them
3   actually directly go toward any comment about obtaining a gun
4   specifically with an obliterated serial number?
5           Based on that, we would offer that their relevance
6   would be much more questioned, and their prejudicial value --
7           THE COURT:  Well, let me ask you this:  In terms of
8   the offense itself, what is the scienter requirement for this
9   offense?
10          MR. XENAKIS:  Knowledge.
11          THE COURT:  Simply knowledge that one is in
12  possession of a firearm, or must there be specific knowledge
13  that the firearm at issue lacks a serial number?
14          MR. XENAKIS:  That the firearm lacks, lacks the
15  serial number, both, Your Honor.  It's a two-element offense.
16          THE COURT:  All right.  Does the government agree
17  that knowledge of both elements -- both facts is necessary?
18          MR. GIBBS:  We do, Your Honor.
19          THE COURT:  All right.  How was the lack of a serial
20  number communicated to this defendant?
21          MR. GIBBS:  Judge, the defendant for a period of
22  time -- and the three transcripts the Court has are included in
23  that -- talked about his desire to get a firearm and to get a
24  firearm that was untraceable.  Those conversations occurred in
25  August.

1                On October 1 of that same year, the CHS spoke to the
2     defendant and told him he could get him a firearm, which is
3     what the defendant had been asking about, and at that time, he
4     told him it was obliterated, and he told him that was illegal,
5     and the defendant's response was to say, "Don't talk to me
6     about that on the phone.  Let's meet."
7                And soon thereafter, they met, and the defendant
8     expressed a willingness to buy the firearm.  He told the
9     defendant (sic) he wanted to get it, and they negotiated on a
10    price.
11               THE COURT:  So you're saying that actually -- I might
12    have missed that in this conversation -- the word "obliterated"
13    is really there, serial number is obliterated?  I didn't think
14    it was.
15               MR. GIBBS:  No, not in the three transcripts that the
16    defense is attempting to suppress --
17               THE COURT:  All right.
18               MR. GIBBS:  --  but you asked about when it was
19    raised.
20               The October 1 conversation was the first time it was
21    introduced.
22               THE COURT:  And that's recorded?
23               MR. GIBBS:  It is recorded, Judge.
24               THE COURT:  That's going to be played for the jury?
25               MR. GIBBS:  It is, Your Honor.

1           THE COURT: You have transcripts of all these
2  recordings, correct?
3           MR. GIBBS: We do, Judge.
4           THE COURT: All right. I'm going to deny the motion
5  in limine. The government -- these three conversations are
6  adequately related. They're not unduly prejudicial. If the
7  entrapment defense is not raised, they may then not be
8  appropriate, but I don't know how else you could defend this
9  case, frankly, from what I'm hearing from the government.
10          You know, if you come in Monday morning at quarter of
11 ten and say, "We're not going to raise an entrapment defense,"
12 then I may have to reconsider some of this, all right?
13          MR. XENAKIS: Understood, Your Honor.
14          THE COURT: All right. Just for my knowledge, is the
15 defendant a U.S. citizen?
16          MR. XENAKIS: Yes, Your Honor. Yes, Your Honor.
17          THE COURT: All right. I will tell the government I
18 am somewhat concerned by the evidence of the mental health
19 background of this defendant. I don't know whether, you know,
20 what's going on here. Given the value of that particular
21 witness you have in this case, I hope that this is a wise
22 enterprise on Monday.
23          In any case, how long is this case going to take to
24 try? What's your best estimate?
25          MR. GIBBS: Judge, unless jury selection takes a long

1  time, I think it's going to take a day.
2          THE COURT: All right.
3          MR. GIBBS: And if, if I could indulge the Court,
4  Your Honor mentioned about not wasting the jury's time with
5  tangential issues. You just mentioned the mental health
6  question, and I wanted to raise that with the Court.
7          Mr. Brehm had provided us this week with the two --
8  well, I'd gotten one, the 2013 report at the bond hearing. The
9  second report that talked about some sort of autism spectrum
10 disorder, the doctor didn't even look at him until this month.
11 We got that a few days ago.
12         I asked Mr. Brehm if I could see the qualifications
13 for the doctors who would be testifying. He informed me at
14 that time he's not going to be calling witnesses on that point,
15 and so the concern, Judge, is in the motion to suppress that
16 was just filed --
17         THE COURT: It's a motion in limine. It results
18 possibly in suppression --
19         MR. GIBBS: Right.
20         THE COURT: -- but it's a motion in limine.
21         MR. GIBBS: Right. Thank you, Judge.
22         And on page 2, the defendant said, "At the time,
23 Mr. Endris was a 19-year-old and had a documented cognitive
24 disability that he had informed the CI about."
25         I don't believe that's right. First of all, the

1  diagnosis didn't occur until April, and the CHS's last contact
2  with him was in December, so I don't believe the defendant --
3  that that happened.  I don't think the defendant told him about
4  that, but our objection would be to trying to back-door in
5  inadmissible hearsay about a mental disorder through a CHS.
6  The CHS is not some sort of trained doctor.
7              So, you know, we're going to be alert to that, and I
8  think if the defense tries to ask those questions, it would be
9  inappropriate, and we would object.
10             THE COURT:  Is that part of the plan from the
11 defense?
12             MR. XENAKIS:  Your Honor, we don't plan on
13 introducing mental health evidence through the, through the
14 confidential informant.  I believe it's our understanding that
15 Mr. Endris has dealt with a, has dealt with a disability for
16 most of his life, and we have a basis to believe that he
17 informed the confidential informant about that.  I don't
18 believe that we're going to be asking the confidential
19 informant about any specifics or logistics on that matter.
20             THE COURT:  All right.  Well, we'll face that issue
21 if and when it comes up.
22             All right.  Anything further on this case?
23             MR. GIBBS:  Just briefly, Judge.  One question we
24 had -- one of the pieces of evidence is $300 in cash.  I never
25 like to have a lot of money in the courtroom.  We were going to

9

1   take a picture of it unless the defense or the Court has a
2   problem with that.
3           THE COURT:  Any objection to the photographic
4   substitution?
5           MR. BREHM:  No, Your Honor.  I believe they're going
6   to take that same procedure with the firearm, questioning the
7   firearm.  Physically, it will be offered as an exhibit, but the
8   exhibit list, which we received a few days ago, and we
9   appreciate that, includes some photographs of the firearm which
10  we received in discovery as well, so I imagine that the -- what
11  might be sent back to the jury would be photographs of the gun.
12  That's often a standard procedure in a firearms case.
13          We have no problem with doing that with the money,
14  and, in fact, if the money is itself offered as evidence but
15  then photographs are also offered in evidence of that same
16  money and the photographs are the ones sent back to the jury,
17  we wouldn't have any opposition to that at all.
18          THE COURT:  All right.  So the cash does not need to
19  be in the courtroom at all.
20          MR. GIBBS:  Okay.
21          THE COURT:  We'll accept a photographic substitution.
22          I normally have the firearm physically in the
23  courtroom.  I usually let Mr. Wood publish it to the jury, but
24  when it goes back to the jury room for deliberation, they'll
25  get the photograph substitution.

```
 1              MR. GIBBS:  And that's our plan, Judge.  That's
 2   exactly the way we --
 3              THE COURT:  Any, any objection to doing it that way?
 4              MR. BREHM:  No.  That's the understanding I just
 5   expressed.
 6              THE COURT:  Fine.
 7              MR. BREHM:  And that is often the practice.  We have
 8   no objection to that, Your Honor.
 9              THE COURT:  Fine.
10              MR. BREHM:  And then I just, in terms of the -- it's
11   going to be a fairly short trial, but I hate to ever
12   underestimate the time and have the Court rely on that.
13              THE COURT:  I've got two days blocked out, so we
14   shouldn't have any problem with it.
15              MR. BREHM:  I would expect the evidence would be
16   finished at least by lunch on Tuesday anyway.
17              THE COURT:  All right, that's fine.
18              MR. GIBBS:  And then the last thing, Judge, you had
19   asked about the transcripts.  We do have all that ready to go.
20   Would it be possible for us to come into the courtroom, make
21   arrangements to come in at some point today and have Mr. Ragin
22   just cue it up to do a test run before trial on Monday?
23              THE COURT:  Yes.  You'll need to coordinate that
24   either with Ms. Guyton or with Lance Bachman, all right?
25              MR. GIBBS:  I think he's been in touch with
```

1  Mr. Bachman.

2          THE COURT: All right. I really don't want it Monday
3  morning, so if you're going to do it -- and we have the
4  Introduction to the Courthouse program this afternoon at three,
5  and he's involved with that, so I leave it with you, but just,
6  you know, we'll not hold up the jury trial Monday morning, all
7  right?

8          MR. GIBBS: Our thought was to do it today, Judge.

9          THE COURT: All right. Well, hopefully, he can do
10 it.

11         All right, that concludes the criminal docket, and
12 we're going to take a five-minute recess, and we'll start the
13 civil docket at quarter after.

14                    (Which were all the proceedings
15                     had at this time.)

17              CERTIFICATE OF THE REPORTER
18    I certify that the foregoing is a correct transcript of
19 the record of proceedings in the above-entitled matter.

22                              _____/s/_____
                                  Anneliese J. Thomson